The opinion of the court was delivered by
DukcaN. J.
This is an action of debt, on the bond of James Cresson and Frederick Foering to the Bank of the Northern Liberties, as securities of Benjamin Williams, first book keeper of the bank.
There are several pleas on which issues have been joined to the country. To the sixth plea, which alleges that the bond was taken by the bank, under colour and pretence of an act of assembly of the 21st of March, 1814, for regulating banks, and that the bond is not in conformity to the act nor the by-law of the corporation, inasmuch as Benjamin Williams was not a party to the bond, nor bound in any bond to the bank, the plaintiffs have demurred, so that the question is, Is the writing binding? has it any obligatory force on the person who executed the instrument, or void on account of that non-conformity? This depends on the fifth article of the banking act, and the by-law of the 11th of June, 1816. That article directs, that “ The board of directors of each bank shall have power to make by-laws, for the government and regulation of the corporation, to appoint a cashier and all other officers, clerks, and other persons, necessary for executing the business of the bank, and it shall be the duty of such board to take a bond of the cashier, with two or more sureties, for such sum as shall be determined by the board, conditioned for the faith» *312 ñü execution of the duties of his ofSce or appointment, and the said board shall take such security for the good behaviour of . the other officers, &c. as the by-laws prescribe, and shall establish the compensation to be paid to the president, cashier, and other officers.” The by-law directs, that the security which shall he required of the cashier, clerks, and other inferior officers, &c. on entering on the duties of their office, shall be as follows; viz. The cashier shall give bond to the bank, with one or more sureties, to be approved by the board, in a sum not less than forty thousand dollars; the first book keeper, in six thousand dollars. That this bond does conform to the exact letter of the by-law, it will be difficult to maintain; for the book keeper was to be bound, in a bond with one or more sufficient sureties. Now, he is not bound in any bond. But whether this non-conformity vitiates the instrument, either as a statutory instrument or a binding stipulation at common law, is a very different question. The act does not direct the giving any bond, nor its form, except in the case of the cashier. Whether that provision, making it the duty of the board to take bond in a prescribed form would be imperative, and render the obligation taken in any other form void, or would be merely directory, is not necessary now to decide; for the act is silent as to any other officer than the cashier. The act gives very ample powers to the board of directors, to make by-laws for the government of the bank. It confers a general power on the board to appoint a cashier and all other officers necessary for executing the business of the bank, but does not require the appointment of officers, to be by virtue of any by-law. It is a general power of appointment. The directors are left to their own discretion, as to the sureties of all other officers. The act of incorporation, gives authority to make by-laws for their own regulation and government; but it is not required that the whole business of the bank should rest in by-laws, but the whole business of the bank is confided to their directors, and of course it would rest upon them to fix the duties, the salary of officers, and their security. By the acceptance of the bond, the directors required no other security, and the acceptance amounts to a ratification. The. obligors have become bound to the bank for Williams, and the bank has accepted that security'; and therefore, the maxim of om~ nis ratihahitio retrotrahitur, et mandato priori equiparatur will fully apply. It does as well apply to the bank directors as to individuals. Fleckner v. U. S. Bank, 8 Wheat. 356. The act, as to other officers than cashiers, prescribes no specific security. The common law mode of acting must be inferred, whether it is by bond or mortgage. The ancient doctrine of the common law, that a corporation can only act through the instrumentality of a common seal is applied to common law corporations, and even that has been broken in upon by modern authorities. It has no application to corporations created by statute, whose charters contemplate the business of the corporation to be transacted exclusively by a spc- *313 .cial body or board of directors. Whatever controversy, in fact, as to the delivery by the obligors and acceptance by the bank, may hereafter occur on the trial of the issues in fact, these facts in this plea must be taken for granted.
The making of by-laws is incident to every corporation, for, as is said by Lord Honbart, (Hob. 252, 2 Kyd on Corp. 97,) though power to make by-laws, be given by a special clause in the charter of a corporation, yet that it is needless; for it is necessarily incident to every corporation. Where a corporation is created by statute for a particular purpose, and .the power to make by-laws relative to .the objects of the institution, is expressly given, this neither .enlarges nor abridges the power they would have without such .express clause, 2 Kyd, 503. It would seem to follow, as a necessary consequence from these undoubted positions, that. the board of directors intrusted generally with the concerns of a banking institution, the appointment, suspension, and removal of officers, .and with a discretionary power to appoint on any security they might think .proper, could have taken security in a less sum, or .could have dispensed with it altogether; for a deficiency of duty in not taking the security required by the by-law, and any loss sustained in consequence of it, I thiiTfc was a matter between the directors and the stockholders; and that the obligors, who-have .voluntarily entered into the stipulation, cannot withdraw themselves from their obligation. The act of incorporation left the matter of surety entirely to the discretion of the directors. Whether they have exercised that discretion properly or improperly, whether, if the stockholders have sustained an injury by their gross negligence, they, would not be responsible to the stockholders, are foreign questions to the present inquiry; and if any possible injury could be sustained by the sureties, in taking the bond without joining the book keeper, the law would not consider .that .as absolving them from their own voluntary act — volenti non fit in-juria. The corporation had capacity to take a bond from the officers of .their appointment, either '.with or without sureties,— could take a bond from their friends for the faithful performance of the officer. Thi.s is a power necessarily incident to the general power of conducting the affairs of a monied institution, without any special authority. The effect of the by-law could not prevent them from taking security from the officers in any form .they pleased. They might increase ,or diminish the s.um they would require; they might take new and additional securities, in addition to a bond given by the officer and his sureties. I cannot see any thing, in reason, in law, or in .equity, to absolve these obli-gors from their bonds, or dissolve their contract. They have voluntarily .entered into it; it was not prohibited by any law, or against any general policy. Courts cannot indulge their private feelings syhe.re loss has happened to a surety; for it would be idle ¡Lo take *314 security in any case, if hardship could be a reason for not giving it its full effect. Beyond the letter of the obligation, it is not to be strained by any equity; but, so far as they have bound themselves, courts cannot unbind them. For I understand the law to be this: if it was a bond which no lawdemánded, or, if demanded, it had not strictly conformed to the law; where the bond was given under no deception, under no mistake of the obligor, it is good as a bond at common law; and the inclination of my mind is, that where a statute gives a particular form, makes it the duty of- officers to take a bond in that form, and there is another form which is to produce the same effect, this changes not the obligation required, though it differ in circumstances, in sum, in the number of sureties, and the nature of the security, and there is no provision in the act declaring it to be void, unless the prescribed form is pursued. It is a valid obligation at the common law. Nothing can more strongly illustrate this distinction than the statute 23 Hen. 6, restricting bail bonds to be taken by sheriffs. Without burdening the case with a reference to particular authorities, I shall refer to the valuable note of Serjeant Williams to Posterne v. Hanson and Hooker, in 2 Saund. 60, a. No. 3. The nature and form of the security is given by the statute; it is to be by bond, and therefore an agreement in writing made by a third person, is void, because the statute giving the bail bond declares, “that if the sheriff takes an obligation in any other form, it shall be void; but if a bond is given to the plaintiff, in another form than that which the statute prescribes, it is valid. Maleverer v. Redshaw, 1 Mod. 35. The bond is void by the express words of the statute, and Justice Twisdeií said, “ I have heard my Brother Hobart say upon this occasion, that because the statute would make sure work of it, and not leave it to exposition what bonds should be taken, therefore it was added, that bonds taken in any other form should be void. ‘For,’ said he, ‘the statute is like a tyrant, — when he comes, he makes all void; but the common law is like a nursing father, — makes void only that part where the fault is, and preserves the rest.’ ”
There is a known difference between circumstances which are the essence of a thing required to be done by a statute, and clauses merely directory. Rex v. Loxdale and others, 1 Burr. 447. Under our land laws, the act of assembly directs the surveyor to run and mark the lines on the ground, and further enacts, that all surveys made before the warrant authorizing it comes to his hands, shall be accounted clandestine, and shall be void and of no effect. The first injunction is-directory, the latter provision is imperative and peremptory. This distinction has long prevailed, and is not only the ancient but the modern doctrine of the law. The board of directors had an inherent power to require security from their officers, by the very nature of the institution, without any special *315 authority either from the statute or by-laws. If both had-been silent, they still had this authority.
I am therefore of opinion, that the demurrer be overruled, and judgment entered for the plaintiffs on that plea.