# Speck *against* The Commonwealth.

If an Act of Assembly prescribe the form of the condition of a bond, and specify the nature of the acts and duties which the officer shall be bound to perform, it may be considered as directory; and notwithstanding it may designate acts and things to be done beyond those specified in the Act, it is good as to those which are specified, and recovery may be had upon it against the sureties; unless the Act prescribes the form of the bond, and provides that it shall be taken in that form, and no other.

An action may be brought against the sureties of a public officer immediately upon the settlement of his accounts, notwithstanding the provision in the 9th and 10th sections of the Act of 1811; the state treasurer is not bound to wait six months after the settlement before bringing suit.

A collector of tolls, who held his office for several successive years, and gave a bond each year, with different sureties, made payments throughout the whole time, which the commonwealth applied to the discharge of those debts which were first due by him, without regard to the date of the payment; *held* to be rightly appropriated.

ERROR to the Common Pleas of *Perry* county.

The Commonwealth of Pennsylvania against Frederick Speck, Robert Clark, David M'Coy, and William Wallis. This was an action of debt upon the official bond of Frederick Speck, as collector of tolls upon the Pennsylvania Canal, dated the 10th of February 1838, which had the following condition annexed to it:

"Whereas the Board of Canal Commissioners, &c., by virtue of the power vested in them by law, have appointed Frederick Speck collector of canal tolls at Liverpool. The condition of this obligation is such, that if the above bounden Frederick Speck shall, and does well and faithfully discharge the duties of collector of tolls upon the Pennsylvania Canal, so long as shall he continue to act in the capacity of collector, in pursuance of the said appointment or otherwise, and until a successor shall be appointed; and shall account for, and pay over all moneys he may receive,

[Speck v. The Commonwealth.]

arising from tolls on said canal, *rents, fines, and forfeitures,* or otherwise, at such time and in such manner as the canal commissioners may require or direct; and shall perform all the other duties of collector upon the Pennsylvania Canal, which are or may be enjoined upon him by law, or which is or may be lawfully required to do or perform, then to be void, else in force, &c.

The Act of Assembly, under which the bond was given, makes no provision for the receipt of "rents," "fines," and "forfeitures," by the collector.

The plaintiff then gave in evidence the following settlement by the accountant officers:

Frederick Speck, late collector at Liverpool, in account with the Commonwealth of Pennsylvania.

For amount of Canal Tolls, from September 1836 to February 7th, 1839, inclusive, ........................................... $7886.71
By credits, as per Cash Account of Joseph Lawrence and Daniel Sturgeon, from May 1836 to April 1839, inclusive, ................... 7433.10

Due the commonwealth, ................ $453.60

Settled and entered,
GEORGE R. ESPY, *Auditor General's Office, May* 21st, 1840.

Approved,   A. H. READ,
*Treasury Office, May* 27th, 1840.

The defendants then, in order to explain the foregoing settlement, and to show the items of which the account was composed, gave in evidence the following account, taken from the auditor-general's books, and duly certified.

*Frederick Speck, Collector of Tolls, Liverpool.*

| | |
|---|---|
| 1836 Sept. 21, Tolls received till 30th of June, ........... $966.11 | 1836 May, By cash to Joseph Lawrence, State Treasurer, ... $168.88 |
| 1837 May 16, do.  do.  for 6 months, ending the 31st of December 1836, ...... 1172.19 | "  June ........do........... 400.00 |
| | "  July ........do........... 397.52 |
| .."  Dec. 14, do.  do.  for 6 months, ending 30th of June 1837, ............. 834.64 | "  Aug. ........do........... 260.00 |
| | "  Sept. ........do........... 150.00 |
| | "  Oct. .........do........... 271.96 |
| 1838 Jan. 30, do.  do.  for quarter ending 30th of September 1837, ........... 666.21 | "  Nov. .........do. ......... 200.00 |
| | "  Dec. ........do........... 175.00 |
| | 1837 May ........do........... 329.25 |
| "  March 7, do.  do.  for quarter ending 31st of December 1837, ........... 1213.58 | "  June ........do.. ........ 100.00 |
| | "  July ........do........... 380.00 |
| | "  Aug. ........do........... 81.00 |
| "  Sept. 26, do.  do.  for 6 months, ending 30th of June 1838, ............. 934.46 | "  Sept. ........do........... 205.00 |
| | "  Oct. .........do........... 240.00 |
| | "  Nov. ........do........... 490.00 |
| "  Nov. 15, do.  do.  for quarter ending 30th of September, ................ 766.52 | "  Dec. ........do........... 500.00 |
| | 1838 May ........do........... 375.00 |
| | "  June ........do........... 294.50 |
| 1839 Feb. 14, do.  do.  for quarter ending 31st of December, ............... 1333.00 | "  July ........do........... 245.00 |
| | "  Sept. ......do........... 345.00 |
| | "  Oct. .........do........... 800.00 |
| | "  Dec. ........do........... 710.00 |
| | 1839 Jan. .........do........... 80.00 |
| | "  April .......do........... 235.00 |

By which it appeared that the moneys paid by the collector during the year when the present defendants were sureties, were more than equal to the moneys received by him during that year, after the date of his bond.

The defendants requested the court to charge the jury :

1. That the bond given in evidence, is not in conformity with the Act of Assembly, which prescribes the terms and conditions of it, but embraces greater responsibilities than the law contemplates.

2. That if there be no evidence that Speck, the collector, was furnished with a copy of the account within thirty days after it was settled, or before this suit was brought; and if this suit was brought within six months after the date of the settlement, it was prematurely brought, and the plaintiff cannot recover.

3. If it appear that the collector paid into the treasury the whole amount of money that he received for the year for which the bond was given, the plaintiff cannot recover.

The court answered all these propositions in the negative, and a verdict was rendered for the plaintiff for the amount claimed.

*Reed* and *Watts*, for plaintiff in error, referred to the Act of 10th April 1828, sec. 3, *Pamph. Laws* 275, which provides the form of the bond to be given by collectors, and makes no provision for the receipt of *rents, fines, forfeitures.* The condition of the bond in suit greatly enlarges the responsibilities of the sureties, which avoids it. 9 *Wheat.* 720. But if the moneys paid within the year are more than equal to the moneys received within the same time, clearly the sureties of this year should not be charged with the defalcations of the last. 7 *Cranch* 572.

*Alexander, contra,* contended that if the bond embraced larger responsibilities than the Act provided, yet it was not void ; first, because the collector was not charged with the receipt of anything but tolls, and again, if the bond could be avoided, it would only be for the surplus beyond the requisitions of the law. 1 *Peters's C. C.* 40, 44 ; *Peters's C. C.* 623 ; 12 *Serg. & Rawle* 314 ; 2 *Rawle* 159.

The opinion of the Court was delivered by

KENNEDY, J.—The first error assigned is an exception to the opinion of the court, admitting a certified copy from the auditor-general's office, of the bond upon which the suit is brought, to be read in evidence to the jury. The pleas put in by the defendants to the action, being payment and performance of the condition of the bond, rendered the production of it unnecessary at least for the purpose of proving its existence and execution, because that was admitted by the pleas. The only occasion, therefore, that there could be for producing the bond itself was, that its contents might be fully made known to the court and jury ; but the Act of

[Speck v. The Commonwealth.]

Assembly of the 31st of March 1823, has made a certified copy of it by the auditor-general, from his office, in which it remains, evidence in all cases where the original would be received as such in courts, so that the court decided correctly in admitting the copy in place of the original.

The second error is an exception to the answer of the court given to the first point submitted by the counsel for the defendants. This point was, that the condition of the bond was not in conformity to the Act of Assembly, under which it was taken, but different in its terms from what is thereby prescribed. The court, however, instructed the jury, that as nothing was claimed in this action but what was clearly embraced by that part of the condition of the bond which was strictly in conformity to the Act, the bond, therefore, was good as regarded the claim made on it in this action; and that the plaintiff or commonwealth might recover on it, if entitled to do so in other respects. This instruction, we think, was correct. For, so far as the Act of Assembly prescribes the form of the condition of the bond, and specifies the nature of the acts and duties which the collector shall be bound to perform, it may be considered as directory; and notwithstanding it may designate acts or things to be done and performed beyond those specified in the Act, the bond will be held good at least for everything mentioned in the Act, unless it be declared expressly void, if not taken in the form thereby prescribed, or perhaps negative words used, declaring that it shall not be taken in any other form. But nothing of the kind is contained in the Act under which the bond in suit was taken. It is well settled that a bond taken at common law, containing distinct matters in its condition, some of which are lawful, but others not so, is good and binding as to all matters mentioned therein which are lawful. The same law, I take it, is applicable also to a statutory bond, unless it shall be declared otherwise, as mentioned above, by the statute directing it to be taken. See *The Bank of the Northern Liberties* v. *Cresson*, (12 *Serg. & Rawle* 314).

The third error is an exception to the answer given by the court to the second point of the defendants. By this point the court was requested to instruct the jury that unless it appeared from the evidence that Frederick Speck, the collector, was furnished with a copy of the account made out against him, within thirty days before the bringing of this suit, and that it was not commenced until six months after the settlement and statement of the account, it could not be sustained. This objection to the maintenance of the action, is founded upon the ninth and tenth sections of the Act of the 5th of March 1811, (5 *Smith's L.* 228). The first of which enacts, "Within thirty days after the settlement of an account agreeably to this Act, on which a balance appears to be due to the commonwealth, the auditor-general shall send, by mail or otherwise, to the person or persons indebted, a copy thereof

under his hand and seal of office; and if the amount or balance of such account shall not be paid into the state treasury within six months after the date of settlement, the auditor-general shall have a second official, copy of all such accounts made and put into the hands of the state treasurer." And the tenth section enacts, that "the state treasurer, immediately upon the receipt of a copy of any public accounts, agreeably to the next preceding section, shall proceed to recover the amount or balance due thereby to the commonwealth by due course of law" &c. But the court, upon the authority of the fifteenth section of the same Act, told the jury, that suit might be brought immediately against the sureties of a public delinquent, if it should be deemed conducive to the public interest by the state treasurer to do so. In this direction we think the court was right; for the words of the fifteenth section are, " The state treasurer may, if he deems it conducive to the public interest, proceed *immediately* against the sureties of any public delinquent." So that it appears clearly, from the terms of this last section, that it is left to the sound discretion of the state treasurer, to allow the six months' indulgence after settlement, before suit shall be commenced, or not, as he pleases.

The fourth and last error is an exception to the answer given by the court to the defendant's third point, by which the court was requested to instruct the jury, if it appeared that F. Speck, the collector, paid into the treasury the whole amount of money that he received for the year for which the bond was given, the plaintiff could not recover. To this the court gave the following answer:—" As a general rule, a debtor may appropriate his payments as he sees proper, when he makes them; if, however, he does not do so, the creditor may appropriate; but if neither does, the law will do it. In cases of running account, without any specific appropriation by either party, when debts and credits are made at different times, the payments are to be deemed as made on account of liabilities antecedently due as they stand in the account. The account here was a running one; the payments seem to have been appropriated as the law contemplates, and having been settled by the proper officer, and a balance struck against the collector, as appears by the papers in evidence, I can see no difficulty in the way of the commonwealth's recovering. I cannot instruct you as here requested." Unless the counsel of the defendants meant that the court should have left it to the jury to decide whether the whole of the *identical* money received by the collector for tolls, during the year for which the bond in suit was given, had been actually paid by him into the state treasury, I cannot perceive even the slightest colour for exception to the answer. If, however, the fact were so, and there had been any evidence tending to prove it, that the whole amount of the *very* moneys received by the collector, during that year, had been duly paid by him into the state treasury, there might have been great equity in favour

[Speck v. The Commonwealth.]

of making the appropriation claimed on behalf of the sureties. But no evidence was given, it would seem, tending distinctly to establish the fact. Although the evidence showed that he had paid moneys into the treasury during that year, of perhaps greater amount than what he had received for tolls, yet it did not appear from what source it came. But it appeared that, during the two previous years, he had failed to pay the amount of the tolls received by him; from which it was necessarily to be inferred, that he had appropriated the money so received to his own benefit, or put it out to use. And as it thus appeared, incontestably, that he had been in the practice of using the moneys received by him in payment of tolls, it became impossible to say that the moneys paid into the state treasury by him, during the year in question, were identically the same that he received for tolls during that year. Under the particular circumstances given in evidence, it was quite as probable, that the moneys thus paid by him were derived from those sources to which he had misapplied the moneys received by him for tolls during former years. We therefore think the answer of the court on the third point was likewise correct.

Judgment affirmed.