[No. 18843.    Department One.    January 6, 1925.]

WASHINGTON GROCERY COMPANY, *Respondent*, v. CITIZENS' BANK OF ANACORTES, *Appellant*.[1]

GUARANTY (13)—PAYMENT (14, 17)—APPLICATION—ABSENCE OF APPROPRIATION—LIABILITY.  Under a written guaranty to pay the balance due on an account, not exceeding $1,000, any payment by the debtor on the account would be upon the unguaranteed portion, in the absence of specific directions to the contrary.

GUARANTY (5)—CONTRACT—CONSIDERATION.  A written guaranty of any balance due on a merchant's account is supported by a consideration, where the guarantor furnished the money for the purchase of the store and held a mortgage upon the same.

BANKS AND BANKING (15)—AUTHORITY OF OFFICERS—ESTOPPEL. It is no defense to a written guaranty of an account by a bank that it was made by its president without the previous authority of the board of directors, as required by its by-laws, and it cannot be avoided, where the board did not meet more than twice a year, and its entire affairs were in charge of its president.

Appeal from a judgment of the superior court for Skagit county, Hardin, J., entered April 1, 1924, upon findings in favor of the plaintiff, in an action on contract, tried to the court.    Affirmed.

*Wilbra Coleman* and *H. C. Barney,* for appellant.

*R. W. Greene,* for respondent.

PEMBERTON, J. — Respondent secured judgment against appellant in the amount of $730.50 upon a certain written guaranty, from which judgment this appeal is taken.

[1]Reported in 231 Pac. 780.

In July, 1919, one A. J. McLean borrowed $4,000 from appellant to purchase a stock of groceries and fixtures from one H. H. Soule, at Anacortes, Washington, and to secure this loan a chattel mortgage was given upon the stock of groceries and fixtures. To enable McLean to secure credit with respondent Washington Grocery Company, the appellant signed the following guaranty:

"Anacortes, Wash., Aug. 1st,. 1919.
"Washington Grocery Company,
   "Bellingham, Wash.
."Allen McLean operating a grocery store at Anacortes in Skagit county, state of Washington, desires a line of credit from you, and I write to say that they are reliable and financially good, and to ask in his behalf that you extend to him such credit as in your judgment may be prudent, considering the business transacted by them and in consideration of any credit or accommodations which you have or may extend to him, I hereby guarantee to you at the time of maturity thereof, or at any time thereafter when demand shall be made therefor, the payment of any balance which may be due you on account of any such credits or accommodations so extended, provided, however, that my responsibility under this guarantee shall at no time exceed the sum of 1,000.00 Dollars.

"This guarantee shall continue for all credits extended as above requested, within the limits hereinabove set forth, until such time as I shall, in writing, advise you by registered mail that I will no longer be responsible for credits on accommodations extended under the request herein made.
            "Yours respectfully,
        "Citizens State Bank by M. B. Mattice,
                Pres."

McLean continued the business for approximately one year and became indebted to respondent in a sum over $2,000. On or about August 1, 1920, he turned over to respondent a number of notes amounting to

$410, and accounts of approximately $1,000, to be applied upon the account, reducing the indebtedness due the respondent to $742.67. On August 9, 1920, McLean made a voluntary assignment for the benefit of his creditors, and on September 20, 1920, he was adjudged an involuntary bankrupt. Of the estate of McLean there was a dividend of $12.17 paid respondent upon its claim, leaving a balance of $730.50. This action was instituted against appellant upon its written guaranty.

It is the contention of the appellant that the guaranty was fully satisfied and discharged by the turning over of the $1,000 worth of accounts to respondent. The testimony shows that Dr. Mattice, the president of the appellant bank, called upon Mr. McLean a few days before he made an assignment for the benefit of the creditors and secured from McLean notes and accounts in approximately the value of $1,000, which notes and accounts were delivered to respondent. McLean testified that these notes were turned over to the president of the bank to be given to the respondent company to credit upon his account, without anything being said about the bank protecting itself on its guaranty. His testimony is as follows:

"Q. Now, the accounts weren't turned over by you to the company. You turned them over to the bank? A. Yes, sir. Q. And you expected the bank to protect itself on account of this guaranty? A. No. Q. What? A. Turned over to be applied on my account. Q. To be applied on your account. A. Yes, sir. Q. Was there anything said between you and Doctor Mattice or any one else representing the bank in this proposition? A. There was nothing said that they were to be done otherwise with."

It is claimed, however, that respondent did not apply the $1,000 payment to the unsecured portion of the claim and the court should make the application, considering the equities of the parties.

"If neither party makes an application of the funds, the application should be so made by the court that under all the circumstances the greatest equity shall be done." 28 C. J. 1005, 1006.

"Where that part of a debt which is not yet due is secured by a guaranty and money is sent by the guarantor and debtor, with directions to apply it to their account, the creditor cannot apply it to an account which, although due, is not covered by the guaranty." 28 C. J. 1005.

These rules are not applicable to the facts in this case. Appellant guaranteed not a definite sum, but guaranteed the balance due on the account not exceeding $1,000. Under this agreement a payment on the account would be upon the unguaranteed portion, unless specific directions were given to apply it upon such guaranty.

There was no direction given to respondent by either appellant or Mr. McLean, the debtor, to apply this amount in satisfaction of the guaranty of appellant, and respondent had a right to make the application without reference to the guaranty. *Post-Intelligencer Pub. Co. v. Harris,* 11 Wash. 500, 39 Pac. 965; *Beyer v. Bullock,* 56 Wash. 110, 105 Pac. 155; *Crane Co. v. United States Fid. & Guar. Co.,* 74 Wash. 91, 132 Pac. 872; *Sturtevant Co. v. Fidelity & Dep. Co.,* 92 Wash. 52, 158 Pac. 740, L. R. A. 1917C 630; *Smythe v. New England Loan & Trust Co.,* 12 Wash. 424, 41 Pac. 184.

The contention that the guaranty was without consideration is fully answered by the fact that the appellant furnished all the money for the purchase of the grocery store, held a mortgage upon the same and was interested in seeing the business properly conducted.

It is contended that the guaranty agreement is void because it was made in direct violation of the by-laws of the appellant bank prohibiting its president from

making any guaranty unless expressly authorized so to do by its board of directors. It is admitted that the board of directors made no such authorization. The testimony discloses the fact that the board of directors did not meet more than twice a year and the entire affairs of the bank were in charge of its president. Under these facts and circumstances, the appellant cannot avoid the contract of guaranty executed by its president. *Union Savings & Tr. Co. v. Krumm,* 88 Wash. 20, 152 Pac. 681; *Creditors Claim & Adj. Co. v. Northwest Loan & T. R. Co.,* 81 Wash. 247, 142 Pac. 670, Ann. Cas. 1916D 551, L. R. A. 1917A 737; *United States Fidelity & Guaranty Co. v. Cascade Construction Co.,* 106 Wash. 478, 180 Pac. 463; *Moore v. American Sav. Bank & T. Co.,* 111 Wash. 148, 189 Pac. 1010.

The guaranty given by appellant was for any balance not to exceed $1,000. The guaranty was still in effect, had not been canceled in writing by registered mail as provided in its terms, and respondent was entitled to recover the amount due.

The judgment is affirmed.

MAIN, C. J., BRIDGES, PARKER, and TOLMAN, JJ., concur.